Adrienne G. STAIR, Plaintiff,

v.

**LEHIGH VALLEY CARPENTERS LO-CAL UNION NO. 600 OF the UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, et al., Defendants.**

Civ. A. No. 91–1507.

United States District Court,
E.D. Pennsylvania.

April 19, 1994.

Elviria C. LaBarre, Turtzo, Spry, Sbrocchi, Faul & LaBarre, Bangor, PA, for plaintiff.

Stephen C. Richman, Markowitz & Richman, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

### I. BACKGROUND

Following trial in this sex discrimination case, the Court permanently enjoined Lehigh Valley Carpenters Local Union No. 600 ("Defendant") from creating a work environment hostile to women because of their sex. By Order dated January 13, 1994, the Court further ordered Defendant to adopt a statement of policy and procedures for the control of sexual harassment ("Policy").

Defendant subsequently appealed and filed a motion, pursuant to Fed.R.Civ.P. 62(c), to suspend the policy and procedures Order pending the appeal. The Third Circuit Court of Appeals has stayed the appeal pending determination of Defendant's motion.

At Oral argument held on April 7, 1994 the parties agreed that Defendant's motion may be treated as a motion for reconsideration pursuant to Fed.R.Civ.P. 59(e). As the motion was timely filed under Fed.R.Civ.P. 59(b) and the alleged judicial errors appear to be clerical[1], the Court will amend the Policy to the extent stated below.

### II. DISCUSSION

Defendant challenges the Court's policy and procedures Order on two grounds. First, in its brief Defendant argues that "[t]here is no precedent for a finding of liability against a local union for creating a hostile work environment by its distribution of calendars where the complainant was an employee of a third party employer and the employer's supervisory personnel displayed the calendars." The Court rejects this novel argument. The court is bound by precedent, not the lack of precedent. This is particularly the case in evolving fields of law including the law governing sexual discrimination in the work place.

Defendant's second argument, that the Policy requires it to violate section 101(a)(5) of the Labor Management Reporting and Disclosure Act of 1959 ("Section 101(a)(5)"), 29 U.S.C. § 411(a)(5), has more merit. Section 101(a)(5) provides:

No member of any labor organization may be fined, suspended, expelled, or *otherwise disciplined* except for nonpayment of dues *by such organization or by any officer thereof* unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

(emphasis supplied).

In particular, Defendant argues that the Policy mandates the summary discipline of union members and officers in violation of their due process rights. Although the Policy provides for the *complainant's* right to notice, hearing and appeal, the Policy does not specifically safeguard the alleged offending party's due process rights. The Court never intended to deprive the alleged offending party of due process and, for the sake of clarity, amends the Policy to this extent.

Part V of the Policy requires Defendant to host annual seminars on sexual harassment for all union members commencing within 90 days of adoption of the Policy. The seminars must be conducted by the Philadelphia Bar Association at a cost to Defendant of $500.

Defendant argues that the seminars constitute "discipline" of union members in violation of Section 101(a)(5). The Court does not agree. First, the Court imposed the Policy and, thus, punishment is not "by the organization." Second, "discipline" comprises conduct that "directly penalizes [the member] in a way which separates him from comparable members in good standing." *Miller v. Holden*, 535 F.2d 912, 915 (5th Cir.1976). "[T]he rule that discipline under the Act must entail singling out a union member (or a group of members) for punishment and its corollary, that the uniform application of a reasonable union regulation is not discipline finds support in most of the Circuits that have considered the question." *Macauley v. Boston Typographical Union*, 692 F.2d 201, 204 (1st Cir.1982); *see also*

---

1. The Court also has power to amend clerical errors under Fed.R.Civ.P. 60(a).

*Dept. of Labor v. Alum. Brick & Glass Wkrs.,* 941 F.2d 1172, 1180 (11th Cir.1991); *Caldwell v. Int. Longshoreman's Association Local 1694,* 696 F.Supp. 132, 139 (D.Del. 1988).

■ Nevertheless, the Court is persuaded by Defendant's arguments that, as stated, the Policy may impose an undue burden on some union members and officers. Many people, because of distance, disability or unforeseen circumstances may sustain undue hardship in attending the seminars. Further, education of retired members is not likely to effect conduct in the work place. Accordingly, the Policy should require only that active members attend and should give Defendant a limited discretion to exempt attendance in cases of undue hardship.

### III. CONCLUSION

For the foregoing reasons, the Policy shall be amended. An appropriate Order follows.

### ORDER

Upon consideration of Lehigh Valley Carpenters Local Union No. 600's ("Defendant's") motion for stay of injunction, treated by this Court according to the agreement of the parties as a motion for reconsideration, the "Policy and Procedures for the Prevention and Control of Sexual Harassment" ("Policy") adopted by this Court by Order dated January 13, 1994, shall be amended. The Court attaches to this Order, and makes a part hereof, the revised Policy which shall be adopted by Defendant and shall be effective immediately.

The Court shall retain jurisdiction in this action for enforcement purposes only of the attached Policy and Procedures.

**IT IS SO ORDERED.**

### ATTACHMENT

### POLICY AND PROCEDURES FOR THE PREVENTION AND CONTROL OF SEXUAL HARASSMENT LEHIGH VALLEY CARPENTERS LOCAL UNION NO. 600

### I. STATEMENT OF POLICY

#### Introduction

This policy and procedures ("Policy") shall be distributed to all current and future officers, agents, representatives and members of the Lehigh Valley Carpenters Local Union No. 600 ("Union" or "Local 600"), and shall be permanently posted in a prominent location in the Union offices.

Sexual harassment is a violation of Title VII of the Civil Rights Act of 1964 and the E.E.O.C. guidelines. Local 600 strongly disapproves of sexual harassment in any form in the workplace. Sexual harassment is unacceptable conduct and will not be tolerated. For purposes of this policy, the term "sexual harassment" refers to any unwelcome sexual attention, sexual advances, request for sexual favors and other verbal, visual or physical conduct of a sexual nature when:

(a) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; or

(b) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or

(c) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance; or

(d) such conduct has the purpose or effect of creating an intimidating, hostile or offensive working environment.

Any Union member, officer or agent who commits sexual harassment shall be punished in accordance with this policy. This policy pertains, but is not limited to, the following examples of conduct which is not permitted; threatening adverse employment actions if sexual favors are not granted; promising preferential treatment in return for sexual favors; unwanted and unnecessary physical contact; excessively offensive remarks, including unwelcome comments about appearance, obscene jokes or other inappropriate use of sexually explicit or offensive language: the display in the workplace of sexually suggestive objects or pictures; physical assault of a sexual nature; and unwanted sexual advances.

## II. PROCEDURES FOR RESOLVING SEXUAL HARASSMENT COMPLAINTS

### A. Establishing Claims

Any Union member who reasonably believes that he or she has been subjected to sexual harassment, by any officer, agent, representative, employee or member of the Union, may file a written complaint with the Union's business agent within thirty (30) days of the challenged conduct. If the Union's business agent is a subject of the complaint, the written complaint shall be submitted to the Union's president. Within five (5) days of receipt, the Union's business agent or president shall provide the alleged offending party with a copy of the complaint. The complainant or alleged offending party may retain independent counsel, at his or her own expense, to represent him or her during the complaint proceeding.

### B. Commencing an Investigation

Within fifteen (15) days of the business agents receipt of the written complaint, the business agent shall commence an investigation of the charges in the complaint. If the business agent is named by a complainant as an offending party, the Union's president shall commence the investigation. The investigation shall be completed within a reasonable period of time, but in any event, the investigation shall be completed in not more than sixty (60) days. The Union official shall issue a written report of his or her findings to the complainant and the alleged offending party within ten (10) days after the completion of the investigation.

### C. Subsequent Procedures

Within twenty (20) days after the completion of the written report by the appropriate Union official concerning the result of the investigation, the complainant or the alleged offending party may request a hearing regarding the written complaint. All testimony at the hearing shall be recorded.

At the conclusion of the hearing, the business agent or the president shall render a decision regarding the complainant's charges. The decision, in writing, shall be rendered no later than five (5) days following the hearing.

The complainant or the alleged offending party shall have twenty (20) days from the issuance of the decision to appeal the decision to the Union's Executive Board.

### D. The Union's Executive Board's Determination

Within ten (10) days of the submission of the appeal, the Executive Board of the Union shall render a written decision regarding the charges. The Executive Board shall provide detailed reasons for its decision and shall, where appropriate, issue sanctions for the punishment and prevention of future sexual harassment in accordance with the guidelines set forth below.

The complainant or the alleged offending party shall have the right to appeal the Executive Board's decision to an appropriate court of law.

## III. RETALIATION AND VIOLATION OF CONFIDENTIALITY AND SANCTIONS

Local 600, its members, officers, agents or representatives shall not retaliate in any way against one of its members who presents a claim against the Union or any of its members, officers, agents or representatives for sexual harassment. Retaliation is an unlawful act and includes, but is not limited to, expulsion from Union membership and the refusal to refer a Union member for work.

Local 600, its members, officers, agents or representatives shall take every measure to ensure that the identity of the complainant and the alleged offending party shall be kept confidential at all stages of the complaint proceedings and shall not discuss the facts of the complaint with any other person.

Any officer, agent, representative or member of Local 600 who reasonably believes that retaliation has taken place in respect to a member who has presented a claim for sexual harassment pursuant to this Policy or who reasonably believes that confidentiality has been violated in any stage of the complaint proceedings for sexual harassment may file a written complaint with the business agent or

president of Local 600 and the procedure for resolving such claim relating to retaliation or violation of confidentiality shall be the same as set forth in section II of this Policy for resolving a sexual harassment complaint.

Any union officer, agent, representative or member who has been found to have engaged in retaliation or found to have violated confidentiality in any stage of the complaint proceedings for a first offense shall be fined the sum of Five Hundred Dollars ($500.00) and suspended from his or her position or membership in the union for a period of three (3) months. In respect to a second offense for one who has been found to have engaged in retaliation or found to have violated confidentiality in any stage of the complaint proceedings the union officer, agent, representative or member shall be fined the sum of One Thousand Dollars ($1,000.00) and suspended from his or her position or membership in the union for a period of six (6) months.

## IV. *SANCTIONS FOR UNION OFFICERS, REPRESENTATIVES OR MEMBERS ENGAGED IN SEXUAL HARASSMENT*

### *Penalties for committing sexual harassment*

Any union officer, agent, representative or member who has been found to have engaged in the sexual harassment of any member for a first offense shall be fined the sum of Five Hundred Dollars ($500.00) and suspended from his or her position or membership in the union for a period of three (3) months.

Any union officer, agent, representative or member who has been found to have engaged in the sexual harassment of any member for a second offense shall be fined the sum of One Thousand Dollars ($1,000.00) and suspended from his or her position or membership in the union for a period of six (6) months.

## V. *EDUCATION MEASURES*

### *Purpose & Training Seminar*

In order to educate Union members on the issues of sexual harassment in the workplace and allow them to fully appreciate the significance of this policy, all Union officers, agents and members within ninety (90) days of the date of adoption of this policy shall be required to attend an initial educational training program on sexual harassment. The purpose of the program is to describe and explain specific conduct which constitutes sexual harassment and discuss specific measures that should be taken to eliminate sexual harassment in the workplace.

In addition, all active Union officers, agents and members shall be required to attend an annual, two (2) hour training seminar which will be held separately from the regularly scheduled Union meetings. The first annual training seminar shall be held one year after the initial seminar. A minimum of three (3) annual seminars shall be held. The Union may exempt Union officers, agents or members from attendance at a seminar if attendance would require the officer agent or member to incur substantial expense or to travel more than one hundred (100) miles or if attendance would otherwise cause undue hardship.

The initial seminar and the annual seminar will be conducted by a member or members of the Civil Rights Committee and/or the Labor Law Committee of the Philadelphia Bar Association as designated by the Chancellor of that Association. The Philadelphia Bar Association shall be paid a fee of $500.00 by Local 600 for each seminar conducted and the Philadelphia Bar Association shall be responsible for compensating the attorney or attorneys who conduct each seminar. The curriculum of the seminar will be determined by the attorney conducting the seminar considering the purpose of the program as set forth above.

The Union shall schedule the time, date and place for holding the annual training seminar. All seminars shall be held at a convenient location in Allentown. The Union shall use its best efforts to schedule the seminar at a time and date reasonably convenient to the attorney or attorneys who will be conducting the seminar. The Union shall give the Philadelphia Bar Association at least sixty (60) days advance notice of the date of the initial educational training program and

at least ninety (90) days advance notice of the date of the educational training program in future years.

The Philadelphia Bar Association shall not be responsible for scheduling or monitoring the attendance at the seminar. If a seminar is not scheduled as provided herein, the Philadelphia Bar Association shall notify the Court of this fact.

The Court shall retain jurisdiction in this action for enforcement purposes only of the within Policy and Procedures.